**Ex parte Richard D. BYRAM, Relator.**

**No. 2–84–222–CV.**

Court of Appeals of Texas,
Fort Worth.

Nov. 2, 1984.

Leeann Dauphinot, Fort Worth (on appeal only), for relator.

John McLain, Fort Worth, for respondent.

Before FENDER, C.J., and HUGHES and JORDAN, JJ.

## OPINION ON WRIT OF HABEAS CORPUS

JORDAN, Justice.

By this original pro se habeas corpus proceeding, brought under TEX.REV.CIV. STAT.ANN. art. 1824a (Vernon Supp.1984), Relator Richard D. Byram seeks release from his confinement in the Tarrant County jail from August 6, 1984 until October 19, 1984, when he was released on bond by

order of this court. Relator had been arrested and incarcerated on August 6, 1984, as a result of a "PETITION FOR REVOCATION OF PROBATED SENTENCE AND FORFEITURE OF BOND" filed on August 1, 1984, by Byram's former wife, which petition alleged certain violations of the trial court's previous order releasing Relator from jail and suspending the remaining commitment to jail, conditioned on certain terms and conditions to be performed by Relator. This particular confinement of Relator Byram evolved or developed as a result of a bitter and ongoing divorce case between Relator and his former wife, Sara Metcalf. These facts will be set forth below.

We grant the petition for writ of habeas corpus and order the Relator discharged from custody.

Richard D. Byram and Sara Metcalf Byram were divorced on December 5, 1982, and Relator, in the divorce decree, was permanently enjoined from, among other things, approaching or going about Sara either at her residence or place of employment, from communicating with her orally or by telephone or in any other manner, and from interfering with her possession of any property. Sometime in 1983, Sara Metcalf, the former wife, filed her motion to have the Relator, Richard D. Byram, held in contempt for many violations of the permanent injunction entered against Relator on December 5, 1982.

This motion for contempt was tried by the court to a jury which found, in answer to special issues, that Richard D. Byram had knowingly violated the court's injunction in five respects. On November 16, 1983, following this jury trial, the trial court adjudged Relator in contempt of court and ordered him to serve 180 days beginning on November 16, 1983, in the Tarrant County jail for each of the five violations of the court's injunction as found by the jury, the sentences to run consecutively.

On February 13, 1984, after Relator had been in jail for 114 days, the trial court filed an order styled "ORDER OF RE-LEASE FROM JAIL SUSPENDING REMAINING COMMITMENT TO JAIL." This order placed Relator on probation for 786 days conditioned upon compliance by Relator with all of the terms and conditions of the original permanent injunction entered against Relator by the court on December 5, 1982, and was conditioned that he comply with additional orders of injunction by the court, not included in the original injunction issued on December 5, 1982. The probation also required that he comply with all of the terms and conditions ordinarily imposed by a criminal court granting probation in a criminal case, including reporting regularly to a probation officer and paying a supervision fee.

Relator, in his petition for writ of habeas corpus, contends that if there was any hearing held before the "ORDER OF RE-LEASE FROM JAIL SUSPENDING REMAINING COMMITMENT TO JAIL" was entered on February 13, 1984, he was not present at any such hearing. His contention is that he had not received notice of a hearing on the conditions of probation set by the trial court.

On August 3, 1984, Sara Metcalf filed a "PETITION FOR REVOCATION OF PROBATED SENTENCE AND FORFEITURE OF BOND", alleging that Relator had violated the terms of his probation in five respects, including his failure to report and failure to pay the probation fee. In her petition, Sara prayed that an alias capias issue, the Relator be arrested and brought before the court to show cause "why the judgment probating said sentence entered herein shall not be set aside and said probation revoked", and that the $2,500.00 bond set by the court be forfeited in favor of the district clerk "for the benefit of" Sara.

We have not been favored with a statement of facts in this case but so far as this record reflects, there is no showing of any hearing held by the court prior to its issuing the "ORDER OF RELEASE FROM JAIL SUSPENDING REMAINING COMMITMENT TO JAIL." Moreover, of great significance is the fact that there is no order or any showing anywhere in this

record of any hearing held prior to Relator's subsequent incarceration in the Tarrant County jail on August 6, 1984, where he remained until he was released by this court on October 19, 1984.

In his sworn petition for writ of habeas corpus, Relator does allege that he was arrested and placed in jail on August 6, 1984, for violation of the terms of probation and that he has never had a hearing on the motion to revoke the terms of probation.

■ The first question presented for our determination is whether or not the trial court in this case has the power or authority to cumulate or order served consecutively each of the five 180-day sentences for each of the five violations of the permanent injunctions found by the jury on November 16, 1983. We conclude that the trial court has such authority.

TEX.REV.CIV.STAT.ANN. art. 1911a, sec. 2(a) (Vernon Supp.1984), provides that "every court other than a justice court or municipal court may punish by a fine of not more than $500 or by confinement in the county jail for not more than six months, or both, any person guilty of contempt of the court." *Id.* This contempt statute, passed by the Legislature in 1971, replaced TEX. REV.CIV.STAT.ANN. art. 1911 (Vernon 1964), the language of which is identical to art. 1911a, sec. 2(a) except for the punishment provision. In art. 1911, the punishment for contempt was a fine of $100.00 or confinement in the county jail for not more than three days, or both.

The trial court did have the authority under art. 1911 to cumulate or aggregate punishment for separate violations of a trial court's injunction, notwithstanding the fact that the total punishment exceeded the punishment authorized for a single contemptuous act under art. 1911. *See Ex parte Genecov*, 143 Tex. 476, 186 S.W.2d 225, *cert. denied*, 326 U.S. 733, 66 S.Ct. 41, 90 L.Ed.2d 436 (1945). This was an original habeas corpus proceeding wherein the trial court, upon a motion for contempt, found 30 separate, distinct, and specific violations of an injunction previously issued

by the court. *Id.* at 225. The court set the Relator's punishment at a fine of $50.00 and one day's imprisonment for each violation, totalling a punishment of a fine of $1,500.00 and imprisonment for 30 days, which was clearly in excess of the punishment permitted by art. 1911. *Id.* at 225–26. The Texas Supreme Court reviewed the power of a trial court to assess punishment for more than one act of contempt in a single proceeding, and upheld the order, notwithstanding the fact that the total punishment assessed by the trial court exceeded the punishment authorized by art. 1911. *Id.* at 226. The Supreme Court in *Genecov* pointed out that the motion upon which the contempt order was entered charged the Relator with 36 separate, distinct and independent violations of the injunction in the operation of several leases and the trial court, after a hearing, sustained 30 of such charges. *Id.* at 226. With particularity, the Supreme Court said, the order described each and every act of which Relator was found to be guilty and the punishment assessed against him was a fine of $50.00 and confinement in the county jail for a period of 24 hours "for each and every of the aforesaid acts." *Id.* Similarly, in the case sub judice, the trial court's original order of contempt set forth with particularity the specific contemptuous acts of which the Relator had been found guilty by the jury, and the order clearly and specifically assessed five separate and distinct sentences of 180 days each for each of the five acts found by the jury, such sentences to be served consecutively.

*See also Ex parte McNemee*, 605 S.W.2d 353 (Tex.Civ.App.—El Paso 1980, no writ), where the trial court in a child support contempt action assessed a fine of $50.00 per month and imprisonment for three days, for each of the 112 months the Relator was in arrears. *Id.* at 355. The appellate court reversed on several grounds, including the fact that the motion for contempt failed to adequately apprise Relator that punishment for 112 separate contemptuous acts was being sought. *Id.* at 357. The court in *McNemee* held that a district

court has the power to assess punishment for more than one act of contempt in a single proceeding based upon allegations contained in a single affidavit, citing *Ex parte Genecov. McNemee*, 605 S.W.2d at 357. In *McNemee*, the court said that this was possible only where the motion for contempt sets out specifically distinct and separate violations of the order violated. *Id. See also Ex parte Jackman*, 663 S.W.2d 520 (Tex.App.—Dallas 1983, no writ), where a writ of habeas corpus was denied in a case where the trial court found the Relator guilty of 21 separate violations of a permanent injunction in a divorce case, which, as here, prohibited the Relator from molesting or harrassing his former wife and from interfering with her property rights. *Id.* at 522–24. The trial court in *Jackman* made separate findings of contempt on 17 distinct acts and assessed punishment for each act at 180 days, but ordered those sentences to run concurrently, instead of consecutively. *Id.* at 522. It is clear, at least by implication, that the court in *Jackman* was of the opinion that the trial court's order assessing punishment at 180 days for each of the 17 violations was proper. *See id.* at 522–23.

We think it is clear from the cases above cited, that the trial court in this case did have authority to cumulate or aggregate the separate sentences of 180 days confinement for each of the five violations of the court's original injunction, found by the jury, and that it was proper, though perhaps unusual, that the trial court ordered those sentences to run consecutively.

The second question we must answer is whether Realtor's incarceration from August 6, 1984 until October 19, 1984, following the filing of his former wife's "PETITION FOR REVOCATION OF PROBATED SENTENCE AND FORFEITURE OF BOND" was lawful and permissible considering the fact that Relator was never afforded any type of hearing by the court after he was arrested on August 6, 1984. He was taken before the court after his arrest on August 6, 1984, but only for the purpose apparently of having his bond raised by the court to $20,000.00. He was unable to post such bond and was returned to the Tarrant County jail where he remained until released by this court, as aforestated, on October 19, 1984.

■ We think it is clear, just from a recitation of these facts, that the second arrest and restraint of Relator, for alleged violations of the so-called order of probation, or order suspending sentence, without any proof of such violations, was unlawful and highly improper. Even if we were to hold that the trial court had authority for incorporating in its February 13, 1984 "ORDER AND RELEASE FROM JAIL SUSPENDING REMAINING COMMITMENT TO JAIL," the terms of a criminal probation, and additional terms of the restraining injunction, not included in the original injunction order of December 5, 1982, Relator would still have been entitled to a hearing before being incarcerated for violation of that order of suspension of sentence. *See Ex parte Hodge*, 389 S.W.2d 463, 464 (Tex. 1965); *Ex parte Hardin*, 161 Tex. 567, 344 S.W.2d 152, 153 (1961); *Ex parte Hart*, 520 S.W.2d 952, 953 (Tex.Civ.App.—Dallas 1975, no writ).

■ We hold, however, that there was no authority in the law for the trial court, at the time it released Relator from jail on February 13, 1984, to place him under the terms of a criminal probation. The only authority in the Texas Family Code for probation is found in TEX.FAM.CODE ANN. sec. 14.12 (Vernon Supp.1984). It is obvious this section of the code applies only in child support and paternity cases. The caption to that Act is entitled "Child Support and Paternity Suits—Enforcement and Limitations." The real party in interest, Sara Metcalf, Relator's former wife, agrees with this statement of the non-application of sec. 14.12 of the Family Code. There is no provision within that section permitting a court to grant probation for contempt of court arising out of any matter other than child support payments.

It is also conceded by the real party at interest, in her brief, that there is no direct authority for probation in a case such as

this. However, she argues that because contempt is quasi criminal in nature, TEX. CODE CRIM.PROC.ANN. art. 42.12, sec. 8(a) (Vernon Supp.1984), is applicable to this case and permits the inclusion of the criminal probation terms which the court used here. That section of the Code of Criminal Procedure provides that after a probationer is arrested on charges of violating his terms of probation and, unless the defendant has been released on bond, the court shall hold a hearing on the violation of the terms of probation whithin 20 days if the defendant has filed a motion for such hearing. *Id.* Metcalf reasons that since art. 42.12, sec. 8(a) requires the defendant to request a hearing, which the Relator here did not do, that Relator was therefore not entitled to any hearing and his incarceration from August 6, 1984 until October 19, 1984 was lawful.

There is simply no authority for this proposition and we hold that this section of the Code of Criminal Procedure which permits probation under certain standard terms, does not apply to a case which involves contempt for violation of a civil injunction. There is no basis in law or in reason to support an opposite conclusion.

When a person has been found in contempt of court for violating a court order, and his punishment is suspended on condition of compliance, as was done in this case, the requirements of due process of law dictate that the trial court afford him a subsequent hearing to determine whether there has actually been a breach of the condition of suspension. *Ex parte Crocker,* 609 S.W.2d 833, 834 (Tex.Civ.App.—Tyler 1980, no writ); *Ex parte Hart,* 520 S.W.2d at 953. The case at bar involves an alleged breach of a permanent injunction and is therefore governed by TEX.R.CIV.P. 692, which provides as follows:

> Disobedience of an injunction may be punished by the court or judge, in term time or in vacation, as a contempt. In case of such disobedience, the complainant, his agent or attorney, may file in the court in which such injunction is pending or with the judge in vacation, his affida-

vit stating what person is guilty of such disobedience and describing the acts constituting the same; and thereupon the court or judge shall cause to be issued an attachment for such person, directed to the sheriff or any constable of any county, and requiring such officer to arrest the person therein named if found within his county and have him before the court or judge at the time and place named in such writ; or said court or judge may issue a show cause order, directing and requiring such person to appear on such date as may be designated and show cause why he should not be adjudged in contempt of court. *On return of such attachment or show cause order, the judge shall proceed to hear proof;* and if satisfied that such person has disobeyed the injunction, either directly or indirectly, may commit such person to jail without bail until he purges himself of such contempt, in such manner and form as the court or judge may direct. (Emphasis added.) *Id.*

Imposition or re-imposition of a sentence following the suspension of an order of commitment for violation of a court order, whether it be injunctive in nature or otherwise, conditioned on compliance with the court orders, or on other terms, is not self-executing. Before the court can commit or recommit a contemnor to jail for violation of the injunction or other order, the court must set a hearing to determine whether or not a violation of the order actually occurred before a defendant may be committed or recommitted to jail. *See Ex parte McNemee,* 605 S.W.2d at 356–57; *Ex parte Hart,* 520 S.W.2d at 953.

Since Relator in this case was not afforded such a hearing, we hold that his incarceration beginning August 6, 1984, was invalid and without any lawful authority, and that he must be released from that confinement. Accordingly, the writ of habeas corpus is granted, Relator is ordered discharged from custody, and his bond in the amount of $2,500.00 previously set by this court on October 19, 1984 be discharged and held for naught.